1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JUANITA MACHADO,                           No.  2:17-cv-02430 TLN CKD (PS)

12                      Plaintiff,

13              v.                                FINDINGS AND RECOMMENDATIONS

14    J. A. LIZARRAGA,

15                      Defendant.

16

17          On October 17, 2018, the undersigned held a hearing on defendant's motion to dismiss the

18    First Amended Complaint pursuant to Rule 12(b)(6).  (ECF No. 24.)  Plaintiff, proceeding pro se,

19    appeared telephonically, and William McCaslin appeared for defendant.  At the close of the

20    hearing, the court took the matter under submission.

21    I. Legal Standard

22          In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a

23    complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it

24    must contain factual allegations sufficient to "raise a right to relief above the speculative level."

25    Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).   "[A] complaint must contain sufficient

26    factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft

27    v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

28

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).

II.  Motion to Dismiss

Plaintiff initiated this action on November 17, 2017. (ECF No. 1.) The undersigned ruled that the court lacked jurisdiction over plaintiff's original complaint as it failed to state a federal claim, but granted leave to amend. (ECF Nos. 7 & 11.) Plaintiff filed a First Amended Complaint (FAC) on April 30, 2018. (ECF No. 14.) The undersigned ordered service of the FAC on Warden Lizarraga.[1] (ECF No. 15.) In August 2018, defendant filed the instant motion to dismiss, which is fully briefed. (ECF Nos. 24, 29 & 31.)

Plaintiff is married to Oscar Machado ("Oscar"), an inmate at Mule Creek State Prison, and has assisted him in civil rights lawsuits against CDCR. (FAC, ¶¶ 19, 42.) She also assisted another inmate with a lawsuit against CDCR. (Id., ¶ 44.) Plaintiff alleges that she visited Oscar in prison on December 17 and 18, 2016 without incident. (Id., ¶¶ 20-22.) After their visit, Oscar entered the "search room" of the visiting facility and saw a pair of white boxer shorts on top of a table. (Id., ¶¶ 23-24.) The correctional officer who searched Oscar picked up the boxers, searched them, and discovered contraband. (Id., ¶ 26.) Though Oscar denied the boxers were his, he was detained and charged with possession of the contraband. (Id., ¶¶ 27-29.)

Plaintiff alleges: "As soon as defendant LIZARRAGA became aware of the charges against Mr. Machado, he conspired to retaliate against Plaintiff and Mr. Machado for their

_____

[1] Plaintiff also lists "Defendants DOES 1 through 10[, who] are correctional staff assigned to the Investigative Security Unit (ISU) at MCSP." (FAC, ¶ 12.)

participation in several lawsuits against CDCR." (Id., ¶ 30.)  On January 5, 2017, defendant

signed a letter to plaintiff stating that she was "excluded as a visitor from Mule Creek State Prison

(MSCP) due to your suspected involvement in a conspiracy to introduce contraband (Heroin) at

MCSP." (Id. at 17 (Exh. A).)  The letter stated:

> On December 18, 2016, you were the sole visitor of inmate Machado
> (E92214).  Immediately following your visit, inmate Machado was
> found in possession of two bindles totaling to be 44.6 grams of
> Heroin, while exiting A visiting floor.

(Id.)  Plaintiff responded in a letter to defendant that the "incident is a big misunderstanding" and

that she did nothing to jeopardize her visits.  She requested an investigation into the matter,

including review of video footage.  (Id. at 21-22, Exh. B.)  Defendant wrote back, stating:

> After a careful review of all available documents, video surveillance,
> and telephone communication between you and your husband, the
> decision has been made to uphold the exclusion of visitation.  While
> we strongly support visiting as a means of establishing strong ties
> within the community, we must also consider the safety and security
> of the institution.

(Id. at 23, Exh. C.)  Plaintiff appealed the change in her visiting status, but on July 10, 2017,

another prison official denied her appeal and informed her that she could reapply to visit her

husband in January 2019.  (Id. at 30-31, Exh. E.)

Plaintiff alleges "on information and belief" that defendant learned of the Machados'

settlement discussions concerning their two lawsuits against CDCR from an internal CDCR

memo written around May 2016.  (FAC, ¶ 43.)  She alleges that defendant initiated "false

charges" against Oscar[2] and barred her from visiting him in an attempt to chill her First

Amendment rights "to assist her husband in litigation against CDCR for wrongful acts."  (Id., ¶

45.)  Plaintiff asserts claims of unlawful retaliation and conspiracy pursuant to 42 U.S.C. § 1983.

The Civil Rights Act provides:

> Every person who, under color of [state law] ... subjects, or causes to
> be subjected, any citizen of the United States ... to the deprivation of
> any rights, privileges, or immunities secured by the Constitution ...

---

[2] This conflicts with allegations that defendant began retaliating against plaintiff after he "became
aware of the charges against Mr. Machado" (emphasis added).  (Id., ¶ 30.)

3

1      shall be liable to the party injured in an action at law, suit in equity,
       or other proper proceeding for redress.
2

3    42 U.S.C. § 1983.

4           To establish a First Amendment retaliation claim, plaintiff must show: (1) an adverse

5    action against her; (2) because of; (3) her protected conduct, and that such action; (4) chilled her

6    exercise of her First Amendment rights; and (5) the action did not reasonably advance a

7    legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005). Here,

8    defendant concedes that three of the elements are met: plaintiff has sufficiently alleged that a state

9    actor took an adverse action against her; that assisting her husband with his prison litigation is

10   protected conduct; and that defendant's suspension of her visits chilled her ability to assist her

11   husband with litigation. (ECF No. 24 at 12.) At issue are the elements of (2) causation and (5)

12   whether the adverse action reasonably advanced any legitimate correctional goals.

13          Plaintiff has not sufficiently alleged causation, or in plaintiff's words: "whether the

14   [adverse] actions were taken because of Plaintiff's participation in drafting legal documents on

15   behalf of her husband – specifically, whether Plaintiff's conduct was the substantial or motivating

16   factor behind defendant['s] conduct." (ECF No. 28 at 8.) Though plaintiff alleges "on

17   information and belief" that defendant was aware of (1) Oscar's litigation against CDCR and (2)

18   plaintiff's assistance with that litigation, she offers nothing but conclusory statements concerning

19   defendant Warden Lizarraga and unnamed Doe defendants. See FAC, ¶ 49 ("In and/or around

20   February through May 2016, defendants . . . became aware that Plaintiff was assisting her

21   husband during settlement proceedings," "met and discussed how they would respond to

22   plaintiff's successful litigation," "agreed to maintain close scrutiny of phone calls and

23   incoming/outgoing correspondence between Plaintiff and her husband," and "[began] building a

24   deceptive evidentiary case record to secure charges against Plaintiff's husband to initiate

25   Plaintiff's exclusion as a visitor"); ¶ 50 ("The motivating factor behind defendants' unlawful

26   conduct towards plaintiff was her cooperation and participation in her husband's litigation against

27   CDCR."). See Hydrick v. Hunter, 669 F.3d 937, 942 (9th Cir. 2012) ("conclusory allegations and

28   generalities, without any allegation of the specific wrong-doing by each Defendant" are

                                                    4

insufficient to establish individual liability under § 1983), citing <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1948 (2009). Here, plaintiff's bald and conclusory allegations are insufficient to allege causation.

Nor has plaintiff sufficiently alleged that the adverse action did not reasonably advance a legitimate correctional goal. According to defendant's correspondence with plaintiff, she was banned from future visits after Oscar was found to possess heroin immediately after her December 18, 2016 visit. The stated reason for the ban advanced the correctional goal of keeping drugs and contraband out of the prison. While plaintiff alleges a multi-person conspiracy to frame her husband in the furtherance of the goal of barring her from assisting him with future lawsuits, she has not specifically alleged defendant Lizarraga had any knowledge of her legal assistance to her husband, or had any other unstated reason to stop her visits. Thus plaintiff fails to allege a retaliation claim.

Turning to plaintiff's second claim, a conspiracy claim brought under § 1983 requires proof of an "agreement or meeting of the minds to violate constitutional rights." <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th Cir. 2001). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." <u>Id.</u> Here, plaintiff's conclusory allegations that defendant Lizarraga conspired with unnamed Doe defendants to retaliate against her in violation of the First Amendment are not sufficient to state a claim, for the reasons set forth above.

Thus, defendant's motion to dismiss should be granted. Because plaintiff has had one opportunity to amend and it does not appear the pleadings can be cured by further amendment, the undersigned will recommend dismissal without leave to amend.

Accordingly, IT IS HEREBY RECOMMENDED THAT defendant's motion to dismiss (ECF No. 24) be granted and this action dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

5

"Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 18, 2018

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2  machado2430.mtd_fr