UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANITA MACHADO,<br><br>  Plaintiff,<br><br>  v.<br><br>J.A. LIZARRAGA et al.,<br><br>  Defendants. | No.  2:17-cv-02430-TLN-CKD (PS)<br><br>FINDINGS AND RECOMMENDATIONS |

Before the court is defendants' amended motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 59. Plaintiff filed an opposition, ECF No. 65, and a request for judicial notice in support of opposition. ECF No. 66. Defendants filed a reply, ECF No. 70, and objections to plaintiff's request for judicial notice. ECF No. 71. Upon review of the relevant documents, the court finds as follows:

**I.   BACKGROUND**

    a.   <u>Factual Background</u>

The court and the parties are familiar with the facts of this case. Plaintiff's husband, Oscar Machado, is an inmate at Mule Creek State Prison (MCSP). Mr. Machado was transferred to MCSP in December of 2014, and at that time, he was a plaintiff in ongoing civil rights lawsuits against the California Department of Corrections and Rehabilitation (CDCR). Plaintiff regularly assisted her husband with his litigation by, among other things, helping him draft legal

documents.

On or around December 18, 2016, plaintiff visited her husband "without incident." ECF No. 49 ¶ 30. Immediately after the visit, Mr. Machado—along with inmates R. Corona and C. Cardenas—entered the "search room" of the visiting facility. Id. ¶ 31. Mr. Machado saw a pair of white boxer shorts on top of a table. Id. The correctional officer who searched Mr. Machado picked up the boxers, searched them, and discovered contraband believed to be heroin. Id. ¶ 33-40. Although Mr. Machado denied that the boxers were his, he was detained and charged with possession of the contraband.

On January 5, 2017, plaintiff received a letter from defendant Lizarraga—the MCSP warden—stating that she had been excluded as a visitor due to her suspected involvement in the introduction of contraband arising from her December 18, 2016 visit. Plaintiff appealed her exclusion, but it was upheld.

Plaintiff filed this lawsuit alleging that Lizarraga conspired with other MCSP officers to frame her husband with contraband in order to exclude plaintiff as a visitor, in retaliation for her assistance with litigation against the CDCR. Plaintiff asserts two claims under 42 U.S.C. § 1983: (1) unlawful retaliation for engaging in protected First Amendment activity, and (2) conspiracy to violate civil rights. ECF No. 49.

b.   Procedural Background

Plaintiff filed her original complaint on November 11, 2017. ECF No. 1. This court dismissed the original complaint pursuant to the in forma pauperis statute, 28 U.S.C. § 1915(e), because plaintiff failed to allege a sufficient basis for federal jurisdiction. ECF Nos. 7, 11.

Plaintiff filed a first amended complaint (FAC) on April 30, 2018, which defendant moved to dismiss. ECF No. 14. The court granted defendant's motion, finding that plaintiff's conspiracy allegations were conclusory and that plaintiff had not sufficiently alleged two elements of her retaliation claim: (1) causation, i.e., that defendant Lizarraga excluded her visitation privileges because she was assisting her husband with prison litigation; and (2) that the decision to exclude her did not reasonably advance a legitimate correctional goal. ECF No. 33.

Plaintiff filed a second amended complaint (SAC) on March 11, 2019, which the court

screened at defendant's request. ECF No. 42. The court dismissed the SAC, finding that plaintiff had failed to cure the deficiencies in the FAC. ECF No. 45. Plaintiff had not plausibly alleged causation because her allegations failed to show (1) "that defendant Lizarraga knew of plaintiff's assistance before the adverse acts" occurred, and (2) that Lizarraga was "motivated by the fact that she participated with her husband in drafting lawsuits against prison staff." Id. at 3. The court again found that plaintiff's conspiracy allegations were conclusory and speculative.

Plaintiff filed a third amended complaint (TAC) on October 4, 2019. Defendants now move to dismiss the TAC on the grounds that (1) plaintiff still has not cured the deficiencies of her prior two complaints, and (2) defendants are entitled to qualified immunity in any event. ECF No. 59.

**II.   LEGAL STANDARD**

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In order to avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In ruling on a motion to dismiss pursuant to Rule 12(b), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007).

**III.   ANALYSIS**

Defendants move to dismiss the TAC on three grounds: (1) plaintiff has failed to plead

3

sufficient factual allegations to support a plausible First Amendment retaliation claim; (2) plaintiff has failed to plead sufficient factual allegations to support a plausible civil conspiracy claim; and (3) defendants are entitled to qualified immunity. As discussed below, the court will grant defendants' motion as to grounds (1) and (2), and declines to decide ground (3).

**1.     Judicial Notice**

As a threshold matter, plaintiff asks the court to take judicial notice of six documents attached to her opposition: (1) an Associated Press news article concerning defendant Lizarraga, dated March 12, 2020; (2) a report from the California Office of the Inspector General, titled "Monitoring the Use of Force," dated July 2018; (3) a report from the California Office of the Inspector General, titled "Monitoring the Use of Force," dated July 2019; (4) a report from the California Office of the Inspector General, titled "Monitoring the Internal Investigations and Employee Disciplinary Process of the California Department of Corrections and Rehabilitation," dated November 2019; (5) a CDCR inmate request form concerning Mr. Machado's suspension, dated May 2019; and (6) a letter from plaintiff to Deputy Attorney General William McCaslin, dated May 24, 2019. ECF Nos. 65, 66.

Under Federal Rule of Evidence 201, a district court may take judicial notice of a fact that is "not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). A court may therefore take judicial notice of court filings and other matters of public record. Reyn's Pasta Bella LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

The court grants plaintiff's request to take judicial notice of the reports from the California Office of the Inspector General. These reports are public records and are appropriate for judicial notice. Cty. of Santa Clara v. Trump, 267 F. Supp. 3d 1201, n. 11 (N.D. Cal. 2017). The court denies plaintiff's request to take judicial notice of the Associated Press news article, the CDCR inmate form, and the letter from plaintiff because the contents of these documents cannot "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

/////

**2.     First Amendment retaliation**

To establish a First Amendment retaliation claim, plaintiff must show: (1) an adverse action against her; (2) because of (3) her protected activity, and that such action (4) chilled her exercise of her First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005).

Defendants concede that three of the elements are met: plaintiff has sufficiently alleged that a state actor took an adverse action against her by revoking her visitation privileges; that plaintiff engaged in a protected activity by assisting her husband with his prison litigation; and that defendants' exclusion of her visits chilled her ability to assist her husband with litigation. ECF No. 59-1 at 13:1-7. At issue are the elements of (2) causation and (5) whether the adverse action reasonably advanced any legitimate correctional goals.

a.     Causation

To satisfy the causation element of a First Amendment retaliation claim, a plaintiff must show that the protected activity was a "substantial" or "motivating" factor in the defendant's decision to take the adverse action. Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff can prove retaliatory motive with either direct or circumstantial evidence. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012). But because "direct evidence of retaliatory intent rarely can be pleaded in a complaint, circumstantial evidence from which retaliation can be inferred is sufficient to survive dismissal." Id. Here, plaintiff attempts to establish retaliatory intent through circumstantial evidence.

To infer retaliatory intent through circumstantial evidence, a plaintiff must plausibly allege that the defendant had knowledge of the plaintiff's protected activity prior to taking the adverse action, as well as some other evidence probative of motive, such as: (1) temporal proximity between the protected activity and the retaliation; (2) the defendant's expressed opposition to the protected activity; or (3) other evidence that the reasons proffered by the defendant for the adverse action were false and pretextual. Ulrich v. City & Cty. of San Francisco, 308 F.3d 968, 980 (9th Cir. 2002).

As discussed below, the court finds that plaintiff has sufficiently alleged causation in the

5

1  TAC, because plaintiff plausibly alleges (1) that Lizarraga had knowledge of her protected
2  activity prior to taking the adverse action, and (2) additional circumstantial evidence of
3  Lizarraga's retaliatory intent.
4      i.    Knowledge
5  Unlike the prior complaints, the TAC alleges facts to support an inference that Lizarraga
6  knew plaintiff was assisting her husband with litigation prior to the incident on December 18,
7  2016 that led to plaintiff's exclusion as a visitor.  Specifically, plaintiff alleges that when Mr.
8  Machado first arrived at MCSP, "officials" warned him that he would be transferred if he
9  engaged in litigation like he had at the prior prisons.  ECF No. 49 ¶ 25. Approximately six
10 months later, in May of 2015, Lizarraga received a memorandum from the California Attorney
11 General's office notifying him that Mr. Machado was to engage in settlement proceedings in his
12 pending litigation.  ECF No. 49 ¶ 25. Plaintiff alleges that Lizarraga interpreted the notice as Mr.
13 Machado's refusal to heed the warnings issued upon his arrival, and consequently, Lizarraga
14 directed prison staff "to closely track Mr. Machado's incoming and outgoing mail."  ECF No. 49
15 ¶ 66. According to plaintiff, "[i]t was during this investigation Lizarraga was made aware
16 Plaintiff was assisting her husband in litigation."  Id. ¶ 28.
17 Defendant contends that these allegations as to Lizarraga's knowledge are conclusory and
18 speculative, and therefore they should not be entitled to an assumption of truth.  Ashcroft v. Iqbal,
19 556 U.S. 662, 681 (2009).  The court disagrees.
20 Conclusory allegations are "bare assertions [that] amount to nothing more than a
21 formulaic recitation of the elements' of a [claim]."  Id.  "[T]hey do nothing more than state a legal
22 conclusion—even if that conclusion is cast in the form of a factual allegation."  Moss v. U.S.
23 Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009)  For example, in Iqbal, the Supreme Court
24 assigned no truth to the plaintiff's conclusory allegation that former Attorney General Ashcroft
25 and FBI Director Mueller "willfully and maliciously" subjected him to harsh conditions of
26 confinement "solely on account of [his] religion, race, and/or national origin and for no legitimate
27 penological interest."  Iqbal, 556 U.S. at 681.  Conversely, the Supreme Court accepted as true
28 plaintiff's factual allegation that "[t]he policy of holding post-September-11th detainees in highly

1  restrictive conditions of confinement until they were 'cleared' by the FBI was approved by
2  Defendants Ashcroft and Mueller in discussions in the weeks after September 11, 2001." Id.
3      Plaintiff's knowledge allegations are more factual than conclusory, because they do not
4  merely recite elements or legal conclusions. Rather, they provide factual context that, if true,
5  makes the existence of an element more plausible. While plaintiff's allegations may sound
6  surprising or speculative, the Supreme Court has said that allegations should not be discounted
7  because "they are unrealistic or nonsensical." Id.; see also Capp v. Cty. of San Diego, 940 F.3d
8  1046, 1055 (9th Cir. 2019) (recognizing that at the pleading stage, "speculation is hardly unusual
9  in retaliation cases"). "It is the conclusory nature of [the] allegations, rather than their
10 extravagantly fanciful nature, that disentitles them to the presumption of truth." Id.
11     Thus, construing the TAC liberally and accepting plaintiff's new allegations as true, it is
12 plausible that Lizarraga was aware of plaintiff's litigation assistance prior to making the decision
13 to exclude her as a visitor.

        ii.        Additional evidence of motive

15     In addition to Lizarraga's knowledge, the TAC also alleges new facts that, if true, are
16 probative of Lizarraga's retaliatory intent. In the Ninth Circuit, a plaintiff can show retaliatory
17 intent with evidence that a defendant expressed opposition to a plaintiff's protected activity.
18 Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 751–52 (9th Cir. 2001); see also
19 Allen v. Scribner, 812 F.2d 426, 434–35 (9th Cir.1987) (evidence that defendant knew of
20 plaintiff's protected speech and told others that plaintiff should be fired for expressing his
21 opinions raised a fact question as to retaliatory intent).
22     Here, plaintiff alleges that, prior to the December 18, 2016 incident, "Lizarraga spread the
23 word among subordinate visiting staff that Plaintiff and her husband were 'rats.'" ECF No. 59
24 ¶ 32. In this context, the term "rat" could mean that plaintiff was an informant or a person likely
25 to betray another. Construing the TAC liberally, Lizarraga's comment, if true, could be evidence
26 that he expressed disapproval of plaintiff's litigation activities.
27     In addition, a plaintiff can show retaliatory intent with evidence of differential treatment.
28 Capp v. Cty. of San Diego, 940 F.3d 1046, 1056 (9th Cir. 2019) (A plaintiff who shows

7

differential treatment "addresses the causal concern by helping to establish that 'non-retaliatory grounds were in fact insufficient to provoke the adverse consequences.'").  Plaintiff alleges that on December 18, 2016—the day that Mr. Machado was accused of possessing contraband after visiting with plaintiff—two other inmates were in the room where the contraband was found, but "Lizarraga directed [officers] not to detain [the two other inmates] and to exclude them from any reports to make it seem as if Mr. Machado was the only suspect."  ECF No. 59 ¶ 36. Plaintiff further alleges that the prosecutor and the court dismissed the contraband charges against Mr. Machado upon learning that Mr. Machado was not the only inmate in the room where the contraband was found.[1]  Id. ¶ 75.  If plaintiff's allegations are true, then Lizarraga may have treated Mr. Machado and plaintiff differently because of their protected activities.

In sum, the TAC sufficiently alleges that Lizarraga had knowledge of plaintiff's protected activity, as well as other circumstantial evidence that Lizarraga may have had a retaliatory motive.  Plaintiff has therefore cured the causation deficiencies that existed in the prior complaints.

      b.     <u>Reasonably advance a legitimate correctional goal</u>

A plaintiff asserting a First Amendment retaliation claim must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution." <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir.1985).  The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995).  A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were "unnecessary to the maintenance of order in the institution." <u>Watison v. Carter</u>, 668 F.3d 1108, 1114–15 (9th Cir. 2012).  To "avoid excessive federal judicial involvement in prison administration . . . [courts] afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged

---

[1] In the SAC, plaintiff also alleged that after the contraband charges were dismissed, Mr. Holmes—the Chief Deputy Warden—"announced that Lizarraga's action of excluding Plaintiff from visitation was improper and the issue had been corrected." [ECF No. 41 ¶ 66.]  But plaintiff omits this allegation from the TAC.

to be retaliatory." Pratt, 65 F.3d at 807.  The Ninth Circuit has found that institutional security is a legitimate correctional goal. See Nev. Dep't of Corr. v. Greene, 648 F.3d 1014, 1018, 1020 (9th Cir. 2011).

The TAC does not clearly address the absence of a legitimate correctional goal.  In her opposition, however, plaintiff argues that although "prisons have a legitimate penological interest in stopping contraband from entering prisons," [ECF No. 65 at 13:7-8], officials may not use a legitimate penological interest as cover to punish the exercise of First Amendment rights. Id.; see Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003).  Plaintiff's statement of the law is correct. See, e.g., Pina v. Kernan, No. 117-CV-01681-DAD-SAB, 2019 WL 495003, at *2 (E.D. Cal. Feb. 8, 2019) (The otherwise legitimate act of transferring a plaintiff to a prison used for problematic inmates "did not reasonably advance a legitimate correctional goal" because the complaint alleged "that a prison counselor informed plaintiff's cellmate that plaintiff was being transferred . . . because he was a 'litigator' who filed 'too many complaints.'").

But when the complaint shows that the alleged retaliatory conduct comported with prison regulations, plaintiff's allegations will fall short.  For example, in Perkins, an inmate alleged that prison staff denied his family visitation application in retaliation for grievances he had filed against officers. Perkins v. Angulo, No. 18CV850-DMS-LL, 2019 WL 2717225, at *6 (S.D. Cal. June 27, 2019).  Upon reviewing the application and administrative correspondence attached to plaintiff's complaint, the court found that plaintiff had not plausibly alleged that denial of his family visitation privileges failed to advance legitimate penological goals. Id.  Specifically, the complaint indicated that defendants denied plaintiff's application because plaintiff had been found guilty of narcotics distribution, which was an express basis to deny family visitation to inmates under Title 15 of the California Code of Regulations § 3117. Id.

Here, plaintiff has not sufficiently alleged that the decision to exclude her visitation privileges did not comport with the prison regulations—i.e., that the decision was arbitrary and capricious.  Although she alleges a multi-person conspiracy to frame her husband in furtherance of the goal of barring her from assisting him with prison litigation, the complaint also shows that, immediately after her visit on December 18, 2016, Mr. Machado was charged with possessing

heroin with the intent to distribute. Additionally, the administrative correspondence attached to plaintiff's prior complaint shows that plaintiff was excluded "due to [her] suspected involvement in a conspiracy to introduce contraband (Heroin) at MCSP." ECF No. 14 Ex. A. California's prison regulations allow a director such as Lizarraga to exclude an individual who "presents a serious threat to security" or who "is under investigation for a felony committed on institution/facility property." Title 15 of the California Code of Regulations § 3176.3(b).

Given that courts are to afford deference to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory, the court finds that plaintiff has failed to plausibly allege the fifth element of her retaliation claim—i.e., that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution. For this reason, the TAC should be dismissed.

**3.     Conspiracy to violate civil rights**

Plaintiff also brings a conspiracy claim against the defendants. Conspiracy is not itself a constitutional tort under section 1983. Lacey v. Maricopa Cty., 693 F.3d 896, 935 (9th Cir. 2012). It is typically a means of expanding the pool of liable defendants by demonstrating their connections to an underlying crime. Id. As such, the elements for conspiracy under section 1983 are: "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." Avalos v. Baca, 517 F. Supp. 2d 1156, 1169–70 (C.D. Cal. 2007), aff'd, 596 F.3d 583 (9th Cir. 2010). "There must always be an underlying constitutional violation." Lacey, 693 F.3d at 935.

As discussed above, the court finds that the TAC fails to state a claim for retaliation, and thus there can be no underlying constitutional violation to support her conspiracy claim. For this reason, the conspiracy claim fails.

**4.     Qualified Immunity**

Lastly, defendants argue that they are immune from liability under the doctrine of qualified immunity. In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to plaintiff, defendants' conduct violated a constitutional right,

and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001); Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009). A qualified immunity defense is generally not amenable to dismissal under Rule 12(b)(6) because facts necessary to establish this affirmative defense generally must be shown by matters outside the complaint. See Morley v. Walker, 175 F.3d 756, 761 (9th Cir. 1999). A dismissal on grounds of qualified immunity on a Rule 12(b)(6) motion is not appropriate unless it can be determined "based on the complaint itself, that qualified immunity applies." Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001); Rupe v. Cate, 688 F. Supp. 2d 1035, 1050 (E.D. Cal. 2010) (denying to dismiss complaint on qualified immunity grounds because it could not be clearly determined on the face of complaint, but declaring that the ground could be raised through summary judgment).

Because the court has found that plaintiff's claims fail on their face, the court declines to decide whether defendants would be entitled to qualified immunity.

**5.  Plaintiff should not be granted leave to amend her complaint.**

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc); see also Gardner v. Marino, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Here, the court has provided plaintiff with three opportunities to cure her defective pleadings regarding the elements addressed herein. At this juncture, the court is of the opinion that further leave to amend would be futile. The TAC should therefore be dismissed without leave to amend. See Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco, 792 F.2d 1432, 1438 (9th Cir. 1986) ("The district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint.").

**IV.  CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's request for Judicial notice be GRANTED in part and DENIED in part, as set forth herein;

2. Defendants' motion to dismiss (ECF No. 59) be GRANTED; and

3. Plaintiff's claims be DISMISSED with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 9, 2020

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

17.2430.mtd